UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| THOMAS J. THACKER, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | |
| | ) | No. 2:13-cv-00378-JMS-WGH |
| HALTER VEGETATION MANAGEMENT, INC., | ) | |
| | ) | |
| *Defendant*. | ) | |

**ORDER**

Presently pending before the Court in this action brought under the Fair Labor Standards

Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the Indiana Wage Claims Act, I.C. 22-2-5-1, *et seq.*

("IWCA") is a Motion for Partial Summary Judgment filed by Plaintiff Thomas Thacker. [Filing

No. 26.]

**I.**

**STANDARD OF REVIEW**

A motion for summary judgment asks the Court to find that a trial is unnecessary because

there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear,

whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the

asserted fact by citing to particular parts of the record, including depositions, documents, or affi-

davits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials

cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot

produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or decla-

rations must be made on personal knowledge, set out facts that would be admissible in evidence,

and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure

to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed. 202 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to

the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

The Court notes at the outset that Defendant Halter Vegetation Management, Inc. ("Halter") has not complied with Local Rule 56-1(b), which provides that a response to a motion for summary judgment "must include a section labeled 'Statement of Material Facts in Dispute' that identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." *See also* Fed. R. Civ. P. 56(c)(1)(a). While Halter filed a separate document titled "Defendant's Statement of Genuine Disputed Material Facts," [Filing No. 29], it merely lists six "disputed" facts without citing any evidence to support its argument that Mr. Thacker's version of the facts are inaccurate. But Halter must cite to the record – either depositions, documents, or affidavits – to explain why it disputes certain facts, and simply listing facts it disagrees with does not comply with Fed. R. Civ. P. 56(c)(1)(A) and is not helpful.

Additionally, Halter does not tie the facts it has listed to any alleged inaccuracies in Mr. Thacker's Statement of Material Facts Not in Dispute. This approach does not comply with Local Rule 56-1(b), and can result in a concession of the movant's version of events. *See, e.g.*, *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (the Seventh Circuit has "repeatedly upheld the strict enforcement of these rules, sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts"). Nevertheless, the Court has attempted to

sift through the admissible evidence supporting both parties' versions of events, determine which facts are genuinely disputed, and construe disputed facts in favor of Halter as the non-movant.

The Court finds the following to be the undisputed facts, supported by admissible evidence in the record:

### A. Mr. Thacker's Employment at Halter

Mr. Thacker began working for Halter as a tree trimmer in July 2005. [Filing No. 27-1 at 1.] While employed at Halter, his title was either "operator" or "foreman." [Filing No. 27-1 at 1.] Mr. Thacker's job responsibilities included clearing branches and vegetation from power lines, and his work was performed primarily on the side of roads or highways. [Filing No. 27-1 at 2.] Throughout his employment with Halter, Mr. Thacker was paid on an hourly basis and was eligible for overtime pay. [Filing No. 27-1 at 1-2.]

### 1. Uniform Deduction

Due to the nature of Mr. Thacker's job as a tree trimmer, Halter was required to provide certain safety gear and equipment to him. [*See* Filing No. 27-7.] Halter rented this equipment from a company called Sitex, [Filing No. 27-8], but deducted some or all of the rental cost for Mr. Thacker's safety equipment from his paycheck. [*See, e.g.*, Filing No. 27-5 at 2.] In total, Halter deducted $417.88 from Mr. Thacker's paychecks during his employment at Halter. Halter did not have an agreement from Mr. Thacker that if he permitted a uniform deduction, he could revoke his permission at any time by submitting a written revocation to the company. [Filing No. 27-2 at 9.]

### 2. Work Travel

Mr. Thacker resides in Sullivan, Indiana, approximately 37.51 miles from Halter's Vincennes, Indiana office. [Filing No. 27-1 at 1.] During his employment, but particularly during the last three years of his employment, Mr. Thacker drove a Halter vehicle to work sites directly from

his home, and then drove a Halter vehicle home again at the end of the day. [Filing No. 27-1 at 3.][1] [Filing No. 30 at 3.] Mr. Thacker states that he was required on many occasions to drive from his home to the homes of coworkers, or to an agreed meeting place, pick up his coworkers, and drive them to a work site. [Filing No. 27-1 at 3.] Some of the coworkers that Mr. Thacker regularly transported to work sites did not have their driver's license. [Filing No. 27-1 at 3.] Sometimes, Mr. Thacker was responsible for driving equipment in his Halter vehicle to work sites. [Filing No. 27-1 at 3.] Mr. Thacker also had to store the Halter vehicle and equipment at his house. [Filing No. 27-1 at 3.] It was not uncommon for Mr. Thacker to drive a Halter truck with coworkers and equipment to a work site that was one hour or more away from his home. [Filing No. 27-1 at 3.] Mr. Thacker estimates that he drove a Halter truck to transport coworkers and equipment to Halter work sites on "far more than 50%" of his work shifts during the last three years of his Halter employment. [Filing No. 27-1 at 3-4.] Halter did not pay Mr. Thacker for the time he spent driving its vehicles and transporting its employees and equipment to work sites. [Filing No. 27-2 at 12.]

---

[1] Mr. Thacker's direct supervisor for the majority of his last three years of employment, Paul Lockard, stated that Halter provided Mr. Thacker with a company vehicle as a "perk" to his job. Mr. Thacker requests that the Court strike Mr. Lockard's Affidavit because it contradicts testimony from Halter's 30(b)(6) witness. [*See* Filing No. 31 at 4-8.] The Court discusses this issue in detail below.

### 3. *Bona Fide Meal Period*

Halter automatically recorded and deducted a thirty-minute increment of time each full work day from Mr. Thacker's time records.  [Filing No. 27-1 at 2; Filing No. 27-2 at 20.] [2]  This deduction was made on Halter's assumption that its employees, including Mr. Thacker, took a thirty-minute lunch break each day.  [Filing No. 27-2 at 20-21.]  Halter did not keep records re-garding whether its employees actually took a lunch break.  [Filing No. 27-2 at 20.]

Halter did not provide a regularly scheduled lunch break.  [Filing No. 27-1 at 4.]  Mr. Thacker brought food with him to the work sites, and almost never took a lunch break that was thirty minutes long.  [Filing No. 27-1 at 4.]  Instead, he would typically eat his food during a few free minutes and then return to work.  [Filing No. 27-1 at 4.]  Mr. Thacker occasionally drove from a work site to go to a fast food restaurant or a convenience store for lunch, but customarily ate his

---

[2] Mr. Thacker submits what he claims are his timesheets to show that Halter deducted thirty minutes of time each day for a lunch break.  [Filing No. 27-5 (referred to as "Exhibit 5" in Mr. Thacker's brief).]  Implied in the requirement that facts be supported by citation to the record is the requirement that the record – or, in this instance, Exhibit 5 to the brief in support of Mr. Thacker's Motion for Summary Judgment – be visible to the human eye.  The timesheets included in Exhibit 5 are not.  The miniscule print is also blurred, likely making viewing its contents with a microscope impossible as well.  Because this factual assertion is also supported by Mr. Thacker's Declaration, [Filing No. 27-1 at 2], and since Halter does not dispute it, [Filing No. 27-2 at 20], the Court need not rely upon the timesheets included in Exhibit 5.  Further, the Court notes that Exhibit 5 is marked with a title page stating "Response #1-B," but is referred to as Exhibit 5 in the brief and is not an exhibit to a response brief.  The Court also points to its Practices and Procedures, [Filing No. 15], which provide that, to the extent possible, exhibits should be filed as attachments to motions, so that the brief can then use the docket citation when citing to the exhibit, and that "[d]oing so significantly facilitates review of the motion."  [Filing No. 15 at 3.]  Mr. Thacker's counsel should comply with this practice in the future, as failure to do so makes the Court's review of the briefs unnecessarily cumbersome.  Also making the Court's review of Mr. Thacker's open-ing brief cumbersome is the fact that a key exhibit – excerpts from the deposition transcript of Doug Halter – was electronically filed upside-down.  [*See* Filing No. 27-2; *see also* Filing No. 27-3.]  The Court has come to expect better of Mr. Thacker's counsel, who in prior appearances has been far more helpful in his presentations. The Court will consider the failings here an anomaly.

food at the roadside work site and spent an average of fifteen minutes on a lunch break. [Filing No. 27-1 at 4.][3]

**B. The Lawsuit**

Mr. Thacker was involuntarily terminated as a Halter employee on October 1, 2013. He initiated this action on October 22, 2013. [Filing No. 1.] He asserts claims for: (1) violations of the FLSA and IWCA for not paying him for all periods of time worked, including travel time and time deducted for lunch breaks that he did not take; and (2) violation of the IWCA for deducting amounts from his paychecks for his uniform. [Filing No. 1 at 3; Filing No. 1 at 5-6.]

**III.**
**DISCUSSION**

**A. IWCA Claim for Uniform Deduction**

Mr. Thacker argues that Halter improperly deducted amounts from his paycheck for his uniform, in violation of the IWCA. [Filing No. 27 at 9-11.] He argues that a uniform deduction does not fall within the thirteen permitted reasons for a wage assignment listed in the IWCA, and that Halter admits it did not have a signed wage assignment from him permitting the uniform deduction. [Filing No. 27 at 10.] Mr. Thacker contends that the amount of improper uniform deductions totals $417.88, which must be trebled under the IWCA for a total damages award of $1,253.64. [Filing No. 27 at 10-11.] He requests summary judgment on his claim for illegal uniform deductions in that amount. [Filing No. 27 at 11.]

---

[3] Mr. Lockard testifies that Mr. Thacker was given thirty minutes for lunch each day, was never denied a thirty minute lunch break, sometimes took a full lunch break, took a Halter vehicle to a fast food restaurant for lunch on occasion, and sometimes took a lunch break longer than thirty minutes. [Filing No. 30 at 4-5.] But, as discussed below, this testimony does not contradict Mr. Thacker's evidence in any meaningful way.

In response, Halter admits that the uniform deductions violated the IWCA, but disputes Mr. Thacker's calculation of damages.  [Filing No. 28 at 2.]  Specifically, Halter argues that the IWCA caps Mr. Thacker's liquidated damages at double the amount deducted, or $835.76.  [Filing No. 28 at 3.]  Halter also asserts that the Court cannot enter summary judgment for any attorneys' fees in connection with the uniform deductions, because Mr. Thacker has not submitted any evidence reflecting the amount of those fees.  [Filing No. 28 at 3.]  Halter concludes that "Thacker [may be] entitled to summary judgment concerning his uniform wage deduction claim, but only in an amount at this time not to exceed $835.76."  [Filing No. 28 at 3.]

On reply, Mr. Thacker argues that the IWCA mandates payment of the underlying wage owed – here, $417.88 – plus liquidated damages that do not exceed two times that underlying wage owed, which would be $835.76.  [Filing No. 31 at 8.]  Thus, Mr. Thacker asserts, the damages wind up being three times the underlying amount owed.  [Filing No. 31 at 8.]

Halter concedes that it improperly deducted from Mr. Thacker's paychecks for his uniform, [Filing No. 28 at 2], and that is, in fact, the case.  *See* I.C. § 22-2-6-2(a)(1) (listing requirements for any assignment of wages, none of which are present here); and I.C. § 22-2-6-2(b) (listing thirteen permissible wage assignments under the IWCA, of which uniform rental is not one).  Halter also concedes that the amount it improperly deducted for uniform rental was $417.88.  [Filing No. 28 at 3.]  Accordingly, the only issue left for the Court to determine is the proper amount of damages for the improper uniform deductions.

The IWCA provides that:

Every such…corporation…who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due, and said damages may be received in any court having jurisdiction of a suit to recover the amount due to such employee, and

in any suit so brought to recover said wages or the liquidated damages for nonpayment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys.

I.C. § 22-2-5-2.

Here, Mr. Thacker was terminated as a Halter employee on October 1, 2013. Given the length of time that has passed since his termination, the measure of his liquidated damages is double the amount of wages owed rather than 10% of the amount due to him for each day that the amount remains unpaid, since that amount would exceed double the amount owed. Accordingly, Mr. Thacker's liquidated damages are twice $417.88, or $835.76. This figure represents only Mr. Thacker's liquidated damages. Halter also owes Mr. Thacker the original amount due of $417.88, the sum it improperly deducted from his paychecks for his uniform. Thus, the total amount Halter owes Mr. Thacker for the uniform deductions ultimately ends up being three times the amount owed, or $1,253.64. The Court finds as a matter of law that Halter violated the IWCA by taking uniform deductions from Mr. Thacker's paychecks, and that he is entitled to $1,253.64 – which includes the amount owed, plus liquidated damages.[4]

### B. FLSA Claim for Travel Time

Mr. Thacker argues that his use of a Halter vehicle to transport other coworkers and equipment to remote job sites was a principal activity, and thus compensable under the FLSA.[5] [Filing

---

[4] Halter is correct that Mr. Thacker has not presented any evidence of the amount of attorneys' fees he has incurred in connection with the uniform deduction claim. [See Filing No. 28 at 3.] This does not preclude the Court, however, from granting summary judgment on the underlying amount owed and the amount of liquidated damages owed Mr. Thacker, and determining that Mr. Thacker is owed reasonable attorneys' fees. The Court is reserving the issue of the amount of related attorneys' fees for a later determination.

[5] While Mr. Thacker states that "the time [he] spent traveling to a Halter work site was compensable work time," [Filing No. 27 at 11], he appears to limit his travel time claim to time spent transporting coworkers and equipment to job sites, [Filing No. 31 at 9]. Accordingly, Mr. Thacker does not appear to seek payment for time he spent driving from his home to a work site, when he did not also transport a coworker or equipment.

No. 27 at 11.]  Mr. Thacker supports his argument by noting that some of his coworkers did not have drivers' licenses so relied upon him to drive them to the work sites, he had to bring the work truck because it contained necessary equipment, and he had to have a commercial drivers' license to drive the Halter vehicle.  [Filing No. 27 at 11.]  Mr. Thacker asserts that his time spent driving coworkers and equipment to remote job sites benefitted Halter primarily, was a principal activity of his job, and thus is compensable.  [Filing No. 27 at 12.]  He notes that Halter did not keep track of Mr. Thacker's driving activity.  [Filing No. 27 at 13.]

Halter responds by citing the Affidavit of Paul Lockard, which states that the Halter vehicle assigned to Mr. Thacker was a "perk" to his job, and that Mr. Thacker was not required to transport his coworkers to the work sites, to transport equipment (except for equipment customarily maintained in his assigned vehicle) or to go out of his way to pick up equipment.  [Filing No. 28 at 4.] Halter also argues that Mr. Lockard stated that any time Mr. Thacker drove a Halter vehicle for a company purpose or at the request of his supervisor, he was paid for that time.  [Filing No. 28 at 4.]  Halter contends that Doug Halter (Halter's 30(b)(6) representative) was not asked in his deposition whether it was a work requirement that Mr. Thacker transport coworkers or equipment to Halter job sites, and that Mr. Lockard has testified that Mr. Thacker was not required to do so. [Filing No. 28 at 4.]  Halter also argues that "[n]o evidence has been offered that it was Thacker's principal activity to be a driver of co-worker[s] or tools."  [Filing No. 28 at 5.]  Halter notes that it had an agreement over the course of multiple years with Mr. Thacker that travel time from Mr. Thacker's home to Halter work sites was not compensable.  [Filing No. 28 at 5.]  It argues that whether Mr. Thacker's driving time was within a normal commuting area is a question of material fact, to be determined by the Court.  [Filing No. 28 at 5.]

On reply, Mr. Thacker requests that the Court strike Mr. Lockard's Affidavit because Halter is using it to contradict Mr. Halter's earlier deposition testimony, or his lack of knowledge regarding certain issues. [Filing No. 31 at 4-6.] Mr. Thacker also argues, however, that Mr. Lockard's testimony is general in nature, and does not expressly dispute the facts that Mr. Thacker asserts. [Filing No. 31 at 7.] As to the travel time claim specifically, Mr. Thacker notes that Halter does not dispute that he regularly drove Halter vehicles, his coworkers, and Halter equipment to job sites, and that it did not pay Mr. Thacker for that time. [Filing No. 31 at 8.] Mr. Thacker also argues that an employer must pay for all work time it "suffers or permits an employee to perform," so whether or not Mr. Thacker was required to transport coworkers or equipment to job sites is irrelevant – all that matters is that he actually did perform that work. [Filing No. 31 at 9-10.] Mr. Thacker again notes that Halter did not keep records of his driving time. [Filing No. 31 at 10.]

Mr. Thacker's travel time appears to fall into several different categories: (1) driving to Halter's offices or a work site directly from his home; (2) driving to Halter's offices or a work site, but picking up equipment along the way; (3) driving to Halter's offices or a work site, but picking up coworkers along the way; and (4) driving directly to Halter's offices, then driving a Halter vehicle (with equipment and/or coworkers) from Halter to a work site. Although Mr. Thacker asks the Court to find as a matter of law that he is entitled to compensation for travel time, he makes no attempt to parse out these different situations.[6] The Court finds consideration of these different scenarios integral to its decision, and has attempted to identify and address each situation. But Mr. Thacker's failure to cogently address these different scenarios has created an unnecessary burden on the Court.

---

[6] As with the Court's earlier concerns about the quality of the evidentiary submission in support of the instant motion, this failure is also contrary to the high level of practice the Court has come to expect from Mr. Thacker's counsel, based on its dealings with him in other cases.

### 1. *Lockard Affidavit*

At the outset, the Court must address the propriety of Halter's reliance on the Lockard Affidavit. The Court finds that, though it would be improper for Halter to present evidence through the Lockard Affidavit that either contradicts the testimony of Doug Halter – Halter's 30(b)(6) witness – or relates to an area covered by the 30(b)(6) Notice of Deposition, but about which Mr. Halter claimed not to have knowledge, that is not the case here. Indeed, upon close examination, the Lockard Affidavit does not contradict Mr. Halter's deposition testimony in any way that is relevant to Mr. Thacker's travel time claim. Specifically, Mr. Thacker has presented evidence to support the following facts:

- He drove a Halter vehicle from his home to work sites, and from work sites home at the end of the day;

- Sometimes Mr. Thacker drove special necessary equipment to the work sites;

- His home is approximately 37.5 miles from Halter;

- On some days, Mr. Thacker would drive a Halter vehicle to pick up coworkers and transport them to the work sites;

- Certain coworkers that he picked up to drive to work sites did not have a drivers' license and could not otherwise get to the work sites;

- When Mr. Thacker drove directly to Halter work sites, they were routinely farther away from his home than Halter's offices, and frequently over an hour away; and

- Halter did not pay Mr. Thacker for time spent driving at the beginning of the day to Halter work sites, or driving home at the end of the day from Halter work sites.

[Filing No. 27-1.]

Mr. Lockard's Affidavit does not directly contradict any of those facts. Indeed, Mr. Lockard testifies only that Mr. Thacker taking a Halter vehicle to and from work was a job "perk," and

that transporting coworkers was optional and not a requirement. These statements are irrelevant for purposes of Mr. Thacker's FLSA claim, as discussed in more detail below.

The Court notes, however, that it cannot determine whether Mr. Lockard's statement that Mr. Thacker's truck already contained certain equipment, and he was never required to go out of his way to pick up equipment for transportation to a work site, contradicts Mr. Halter's testimony during his 30(b)(6) deposition. The Court's review of the deposition excerpts from Mr. Halter's deposition indicates that Mr. Halter was not asked whether bringing equipment to the work sites required any extra driving for Mr. Thacker, or whether the equipment was kept on the Halter vehicle anyway – at least in the excerpts Mr. Thacker has submitted. Accordingly, the Court will not strike Mr. Lockard's Affidavit on that issue, but ultimately his testimony does not change the result, as discussed below.

### 2. *Driving To Halter or Work Sites From Home and Back Again*

As noted above, it appears that Mr. Thacker does not seek compensation for the time spent driving to work on a normal day in a Halter vehicle, when he did not pick up any equipment or coworkers. The Court briefly addresses this scenario, however. The Employment Commute Flexibility Act ("ECFA"), which is part of the FLSA, provides that:

> [T]he use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a)(2).

The parties have not provided the Court with any guidance regarding what threshold amount of commuting time is considered "normal," but the Court finds that a commute of up to

one hour falls within the normal range and is not compensable. *See Chambers v. Sears Roebuck and Co.*, 428 Fed. Appx. 400, 411 (5th Cir. 2011). Mr. Thacker's drive from his home to Halter or within comparable distances to worksites was 37.5 miles and took approximately forty-five minutes, [Filing No. 27-1 at 1], and the Court finds this to be within a normal commuting area. *See* 1999 WL 1002360, U.S. Dep't Lab. Op. Ltr. (January 29, 1999) (interpreting the ECFA and stating that employee driving company vehicle need not be compensated for travel from home to a work site unless "the time involved is extraordinary"); *Chambers*, 428 Fed. Appx. at 410-11 ("It is well settled that ordinary home-to-work travel is not compensable under the Portal-to-Portal Act in the absence of a contract or custom of compensation that exists between the employer and the employees," and "commute times of up to one hour would comply with [the ECFA]"); 29 C.F.R. § 785.35 ("An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not worktime").

The Court cannot conclude, however, that Mr. Thacker's use of a Halter vehicle was not subject to an agreement, thus making his travel time compensable. While it appears that counsel for Mr. Thacker asked Mr. Halter whether Halter had an agreement with Mr. Thacker that he would not be paid for his driving time which is within a normal commute from his home to the Halter office, Mr. Thacker did not provide the page of the deposition excerpt containing Mr. Halter's answer. [*See* Filing No. 27-2 at 15 (stating at bottom of page 79 of deposition transcript, "Q: Is it true, Mr. Halter, that your company has no agreement with – signed by Tom Thacker or no agreement between Tom Thacker and the company that he will not be paid for time driving a company vehicle so long as his drive time is within what would be a normal commute from his home to the

Halter office?") and [Filing No. 27-2 at 16](#) (skipping to page 83 of deposition transcript)). Because the Court cannot determine how Mr. Halter answered that question, it will not find that Mr. Lockard's testimony that the Halter vehicle was provided as a "perk" to Mr. Thacker (and, impliedly, he would not be paid for commuting in it) contradicts Mr. Halter's testimony. The omission also means that Mr. Thacker has not presented any evidence of a lack of such an agreement. Indeed, Mr. Lockard's testimony that the Halter vehicle was a "perk" indicates that Mr. Thacker's use of a Halter vehicle was subject to an agreement between himself and Halter, based on their custom and practice. *See, e.g.*, *Little v. Technical Specialty Products, LLC*, 940 F.Supp.2d 460, 475 (E.D. Tex. 2013) (for agreement to satisfy the ECFA, it "need not be a contract, it need not be voluntary, it need not be in writing, and it may be imposed on the employee as a condition of employment").

Accordingly, the Court cannot find as a matter of law that the time Mr. Thacker spent driving a Halter vehicle from his home directly to Halter or a work site that was within his normal commuting area, and home again at the end of the day, was compensable because it cannot conclude that his use of a Halter vehicle was not subject to an agreement. The issue will have to be resolved at trial to the extent that Mr. Thacker is even making such a claim.

### 3. Transporting Tools

Assuming Mr. Thacker's normal commuting time was not compensable, the fact that Mr. Thacker also transported equipment to work sites within his normal commuting area does not render that time compensable, because such transportation would be considered "incidental to the use" of the Halter vehicle. *See* *Chambers*, 428 Fed. Appx. at 412 ("Nothing in the statutory scheme requires, or even implies, that such conditions on an employee's use of a company car, including the transportation of parts or tools, can transform an otherwise non-compensable commute in to a compensable one"); *Buzek v. Pepsi Bottling Group, Inc.*, 501 F.Supp.2d 876, 886-87 (S.D. Tex.

2007) (employee's commute in company vehicle did not become compensable where he transported tools and parts in the vehicle); 1996 WL 272188, H.R. Rep. No. 104-585 at 5 (May 20, 1996) (House Report for the ECFA, stating "[m]erely transporting tools or supplies should not change the noncompensable nature of the travel").

However, to the extent Mr. Thacker picked up equipment that was not already on his Halter vehicle and transported it to the work site for the day's job, and if picking up equipment and transporting it to the work site was "integral and indispensable" to Halter's principal activity of vegetation management, that time may well be compensable. *See, e.g.*, *Chambers*, 428 Fed. Appx. at 414. In determining whether picking up equipment is an integral and indispensable part of Halter's principal activity, the test is "whether the activity is performed as part of the regular work of the employees in the ordinary course of business….[W]hat is important is that the work is necessary to the business and is performed by the employees, primarily for the benefit of the employer." *Id.* (quotation and citation omitted).

Mr. Thacker's evidence regarding transporting equipment is vague, and the Court cannot determine as a matter of law whether that transportation was incidental to the use of a Halter vehicle. He states that "it was my responsibility to transport equipment (including chain saws, ropes, ladders and, the vehicle itself) in the vehicle to the work sites." [Filing No. 27-1 at 3.] But it is not clear whether the equipment he transported was regularly kept in his Halter vehicle. He also states that "the truck I often drove was a bucket truck that was necessary to elevate workers to perform their tree trimming work around power lines." [Filing No. 27-1 at 3.] But driving the bucket truck to and from home would not make his commute compensable, as long as it was within his normal commuting area.

Accordingly, the Court finds as a matter of law that time Mr. Thacker spent picking up equipment and transporting it to work sites, to the extent the equipment was not kept on the Halter vehicle he used for commuting, and to the extent that activity was integral and indispensable to Halter's principal activity, would be compensable. Again, the amount of such time is fact sensitive, and will have to be resolved at trial.

### 4. *Transporting Coworkers*

Mr. Thacker relies upon *Bleichner v. Spies Painting & Decorating, Inc.*, 2009 WL 281145 (W.D. Wis. 2009), in arguing that "Thacker's use of the Halter vehicles to transport other coworkers and equipment to remote job sites was a principal activity of Thacker's job, and thus, was compensable work under the FLSA." [Filing No. 27 at 11.] But the facts of *Bleichner* are significantly different from the facts here: Mr. Bleichner drove coworkers to the job site after arriving at the company's office for the day. 2009 WL 281145 at *3 ("From 2005 through 2007, defendants were aware that, at least sometimes, some of a job's crew members met at the shop before traveling in the company vehicle to get to the job site and placed items into the vans before leaving the shop"). Mr. Thacker has not pointed to any authority for the proposition that his commute to and from work is compensable if he picked up a coworker on the way, and picking up the coworker did not extend his commute past the normal range.

To be sure, picking up and transporting coworkers is compensable if doing so extended his commute past the normal commute range, or if Mr. Thacker picked up coworkers and/or transported them to work sites after going to Halter's office, and returned them to Halter's office at the end of the day. *See, e.g.*, *Bleichner*, 2009 WL 281145 at *5. Mr. Thacker states that it was "very common for me to drive a Halter truck with coworkers and equipment to a work site that was one hour or more away from my home in Sullivan, Indiana." [Filing No. 27-1 at 3.] So, to the extent

Mr. Thacker's transportation of coworkers directly from their homes or a meeting place (other than Halter's offices) placed Mr. Thacker's commute outside of a normal commute range, his time over and above his normal commute is compensable. Additionally, to the extent Mr. Thacker transported coworkers to work sites from Halter's offices, that time is compensable as it was his first principal activity of the day. *See, e.g.*, *Bleichner*, 2009 WL 281145 at *7. However, *Bleichner* does not authorize Mr. Thacker to receive compensation for transporting coworkers to Halter or to work sites when picking up those coworkers did not increase his commute time so that it was out of his normal commute area. Again, the determination as to the extent of potentially compensable activity can only be made on a more fully developed record.

### C. FLSA Claim for Unpaid Lunch Breaks

Mr. Thacker argues that Halter did not provide him with a bona fide meal period. [Filing No. 27 at 13-15.] First, he argues that he did not have a regularly scheduled lunch break, that he had to eat roadside at work sites, and that he was not relieved of his work during his lunch break. [Filing No. 27 at 13-14.] Second, he asserts that he was prevented from taking a full thirty minute lunch break on many shifts, would often work through lunch, and would only take a few minutes to eat his food. [Filing No. 27 at 14.] Mr. Thacker notes that Halter did not keep track of whether or not he took a lunch break, but rather its time records indicate that thirty minutes was "auto-deducted" for lunch every day. [Filing No. 27 at 14.]

Halter responds by arguing that there is a genuine issue of material fact regarding how Mr. Thacker spent his lunch periods. [Filing No. 28 at 6.] Halter again relies upon the Lockard Affidavit, in which Mr. Lockard states that Mr. Thacker was given thirty minutes for lunch every work day, that he could start his lunch period any time he desired, that he was never denied a full thirty minute lunch period, that he has witnessed Mr. Thacker taking a full lunch break on occasion, that

Mr. Thacker requested permission to take a Halter vehicle to a fast food restaurant for lunch on occasion and also took the truck without permission on occasion, that Mr. Thacker sometimes took lunch breaks of more than thirty minutes, and that there is no Halter policy to try to deny employees their lunch periods. [Filing No. 30 at 4-5.]

Mr. Thacker replies by arguing that Halter has not offered any evidence to dispute Mr. Thacker's argument that roadside meals cannot constitute an FLSA bona fide meal period, or to dispute Mr. Thacker's claim that Halter auto-deducted thirty minutes for lunch every day. [Filing No. 31 at 11-12.]

The Court finds that Halter has not set forth evidence which contradicts Mr. Thacker's claim that he ate his lunch roadside and was not relieved of his job duties during his lunch breaks. This, alone, is enough to establish that his lunch breaks – to the extent he was afforded them – were not bona fide and thus exempt from compensable time under the FLSA. *See* 29 C.F.R. § 785.19 ("Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals….The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating").

Halter also has not contradicted Mr. Thacker's claim that he did not take a thirty minute lunch break on occasion. Instead, Mr. Lockard simply states that Mr. Thacker was allowed to take a thirty minute lunch break, the time for the break was flexible, and he has witnessed Mr. Thacker taking a full break (or a longer break) on occasion. [Filing No. 30 at 4-5.] But it is irrelevant whether Mr. Thacker was allowed to take a thirty minute lunch break – what matters is whether he actually took a thirty minute lunch break on the days that Halter deducted thirty minutes from

his compensable time.  Halter admits that it deducted thirty minutes from Mr. Thacker's compensable time every day, from 12:00 to 12:30 p.m., and that it did not keep track of whether a thirty minute break was actually taken.  [*See* Filing No. 27-2 at 7-8; Filing No. 27-2 at 20-21.]

The Court finds that Mr. Thacker is entitled to judgment as a matter of law on his FLSA claim related to unpaid lunch breaks.  Halter has not presented any evidence to counter Mr. Thacker's testimony that the lunch breaks were not bona fide meal breaks because he was not relieved of his duties.  Additionally, Halter has not countered Mr. Thacker's testimony that he did not always take a lunch break.

### D.  Recordkeeping Under the FLSA

Mr. Thacker argues generally that Halter was required to make, keep, and preserve records of his time, and that "[w]hen records are incomplete, the employer cannot complain of the adverse consequences visited upon it for the failure to maintain precise records as required under the Act." [Filing No. 27 at 17.]  Halter responds that it was not required to maintain records of Mr. Thacker's travel times or his lunch periods because those periods of time were not compensable.  [Filing No. 28 at 7.]  Mr. Thacker replies that when an employer treats a meal period as an unpaid, bona fide meal period, it has an obligation to make and maintain records showing that the employee actually received a bona fide meal.  [Filing No. 31 at 12.]  Mr. Thacker also argues that his driving time was work time, and Halter was obligated to keep a record of that time as well.  [Filing No. 31 at 13.]

It is undisputed that Halter did not keep records of either Mr. Thacker's compensable driving time, or whether he actually took a thirty minute lunch break each day.  [*See, e.g.*, Filing No. 27-2 at 13; Filing No. 27-2 at 20.]  While the failure to keep records does not, by itself, create liability, it affects Mr. Thacker's burden of proof on damages.  Specifically, because Halter did

not keep records, at trial Mr. Thacker need not present evidence of the "precise extent of uncompensated work," but rather satisfies his burden by proving that he:

> In fact performed work for which [he was] improperly compensated and…[by] produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Lacy v. Reddy Elec. Co.*, 2013 WL 3580309, *12 (S.D. Ohio 2013) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)); *see also* *Brown v. Family Dollar Stores of IN, LP*, 534 F.3d 593, 595 (7th Cir. 2008) ("[W]here an employer failed to keep the proper and accurate records required by the FLSA, the employer rather than the employee should bear the consequences of that failure. To place the burden on the employee of proving damages with specificity would defeat the purpose of the FLSA where the employer's own actions in keeping inadequate or inaccurate records had made the best evidence of such damages unavailable….' [I]n such a situation,…an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'….The burden then would shift to the employer to produce evidence of the precise amount of work performed or to negate the reasonableness of the inference to be drawn from the employee's evidence….If the employer fails to meet that burden, a court may award damages even though they are approximations").

Damages is an issue left for trial, but the Court finds as a matter of law that, because Halter did not maintain records, Mr. Thacker need only show the amount and extent of compensable work he performed – and for which he was not paid – as a matter of just and reasonable inference. If

Halter is then unable to provide evidence of the precise amount of work performed, or is unable to negate the reasonable inference drawn from Mr. Thacker's evidence, the Court will award approximate damages.

### E. Damages Under the IWCA

Mr. Thacker argues that his IWCA claims are "derivative" of his FLSA claims, because his entitlement to payment under the IWCA arises from application of the FLSA. [Filing No. 27 at 17.] Mr. Thacker contends that, to the extent he is owed damages under the FLSA, he would also be entitled to liquidated damages under the IWCA – which would be double the amount of wages due. [Filing No. 27 at 17-18.] Halter does not substantively address Mr. Thacker's arguments, but only responds that "the determination of liability for an IWCA claim based upon a FLSA claim is not right for determination either at this time in the proceeding or by summary judgment." [Filing No. 28 at 7.]

A claim brought under the IWCA is considered "derivative" of an FLSA claim in that the FLSA creates liability for unpaid hours, and the IWCA then provides a right to compensation for those unpaid hours. *See Kellar v. Summit Seating Inc.*, 664 F.3d 169, 178 (7th Cir. 2011) (citing *Gehbauer v. Emas, Inc.*, 679 N.E.2d 1374, 1376-77 (Ind. Ct. App. 1997)). There is an important difference between the FLSA and the IWCA, however. The FLSA contains a "good faith" defense to the imposition of liquidated damages, which provides that "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." 29 U.S.C. § 260. The IWCA does not contain such a defense, but rather provides for a mandatory imposition of liquidated damages.

*See, e.g.*, *Naugle v. Beech Grove City Schools*, 864 N.E.2d 1058, 1065 (Ind. Ct. App. 2007) ("there is no good faith exception in the language of the [Indiana] Wage Payment Statute; rather the statute by its terms mandates compliance"); *see also* I.C. 22-2-5-2 ("[e]very such…corporation…who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter *shall*, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due....") (emphasis added).

Accordingly, the Court finds as a matter of law that, once the extent of unpaid wages owed to Mr. Thacker is determined, he will be entitled to those unpaid wages, plus liquidated damages equaling twice his unpaid wages, under the IWCA. I.C. 22-2-5-2.

**IV.**
**CONCLUSION**

As discussed above, the Court **GRANTS IN PART** Mr. Thacker's Motion for Partial Summary Judgment, [Filing No. 26], and **DENIES IT IN PART**. Specifically, the Court finds as a matter of law that:

- Halter violated the IWCA by deducting from Mr. Thacker's paycheck for uniform rental, and Mr. Thacker is entitled to $1,253.64 in both actual and liquidated damages;

- Halter was obligated to compensate Mr. Thacker for certain time driving a Halter vehicle, including:

  o Time spent driving a Halter vehicle directly to a work site, but only to the extent the work site was outside Mr. Thacker's normal commute area;

  o Time spent transporting equipment to work sites in a Halter vehicle, but only to the extent the equipment was not stored on the Halter vehicle such that transporting it was the first principal activity of the day, or if transporting it occurred after Mr. Thacker had reached Halter's office;

- 23 -

- o Time spent transporting coworkers to work sites in a Halter vehicle, but only to the extent picking up coworkers made Mr. Thacker's commute outside of his normal commute area, or occurred after Mr. Thacker had reached Halter's office;

- · Halter was obligated to compensate Mr. Thacker for thirty minute lunch breaks, as those breaks were not bona fide lunch breaks and Mr. Thacker did not always take the lunch breaks; and

- · Once the extent of unpaid wages owed Mr. Thacker is determined, he will be entitled not only to those unpaid wages, but also liquidated damages equaling twice his unpaid wages, under the IWCA, as well as a reasonable attorney fee.

No partial judgment shall issue. This matter will proceed to trial on the extent of Halter's liability on the issues concerning the transportation of coworkers and equipment, and the extent of damages for all claims.[7]

January 30, 2015

*Jane Magnus-Stinson*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

---

[7] To the extent Mr. Thacker is claiming that time spent commuting directly to and from Halter or a work site within his normal commuting area, without picking up equipment or coworkers, is compensable, that issue will be addressed at trial – specifically, whether there was an agreement governing Mr. Thacker's use of a Halter vehicle.